IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| NORTHERN CALIFORNIA RIVER WATCH, a non-profit corporation; TEAMSTERS LOCAL 70, a labor organization; and EAST BAY ALLIANCE FOR SUSTAINABLE ECONOMY, a non-profit organization,<br><br>       Plaintiffs,<br><br>  v.<br><br>OAKLAND MARITIME SUPPORT SERVICES, INC., a corporation; WILLIAM ABOUDI, an individual; and JORGE GONZALEZ RIVERA d.b.a. CHRISTIAN BROTHERS TRUCK SERVICES, an individual; CITY OF OAKLAND, a municipality; REDEVELOPMENT AGENCY OF THE CITY OF OAKLAND, a local public agency; and COMMUNITY AND ECONOMIC DEVELOPMENT AGENCY, a public agency,<br><br>       Defendants.<br>_____/ | No. C 10-03912 CW<br><br>ORDER DENYING DEFENDANTS' MOTION TO DISMISS (Docket No. 13) |

    Plaintiffs Northern California River Watch, Teamsters Local 70, and East Bay Alliance for a Sustainable Economy have brought suit against Defendants, alleging violations of the Clean Water Act, 33 U.S.C. § 1365. Defendants Oakland Maritime Support

Services, Inc. (OMSS) and William Aboudi (Moving Defendants) move to dismiss the suit against them under Federal Rules of Civil Procedure Rules 12(b)(1) and 12(b)(6).[1]  Docket No. 13.  Having considered all of the parties' submissions, the Court denies Moving Defendants' motion to dismiss.

BACKGROUND

The Clean Water Act prohibits discharge of pollutants into navigable waterways except as authorized by the statute.  San Francisco BayKeeper, Inc. v. Tosco Corp., 309 F.3d 1153, 1156 (2002).  The Act is largely administered through the National Pollution Discharge Elimination System (NPDES) permit program, under which states are authorized to issue and administer NPDES permits.  Id.; 33 U.S.C. § 1342(b).

Plaintiffs' First Amended Complaint alleges the following.  Plaintiffs are two California non-profit organizations and a local labor union, whose members live in the San Francisco Bay area and enjoy and use the waters impacted by the alleged violations.  OMSS is a California corporation that operates and controls a maritime transportation support facility located at the northern end of the Port of Oakland Harbor Facilities.  The OMSS facility covers over 700,000 square feet, and is the site of the claimed violations.

OMSS leases the property from the Redevelopment Agency, and Defendant Jorge Gonzalez, doing business as Christian Brothers

---

[1] No proof of service on the other Defendants has been filed.  The deadline for serving them is March 2, 2011.

2

Truck Services, is engaged in truck repair and maintenance services at that location. The Community and Economic Development Agency (CEDA) implements projects and programs in the ten areas managed by the Redevelopment Agency. CEDA staff members oversee the day-to-day management of the properties owned and leased by the Redevelopment Agency, including the OMSS facility.

OMSS began operating its facility on or about August 7, 2006. The facility consists of several buildings, and a yard with paved areas. It is within a few hundred feet of the San Francisco Bay. Industrial activities at the facility allegedly include, but are not limited to, the storage of truck tractors, containers and trailers; truck repair and maintenance; tire, container and trailer repair; and fueling services. As a result of these activities, the substantial industrial machinery and heavy equipment stored at the facility, and the lack of a cover over the property, oil, grease, rinse water, engine coolant, solvents, fuels and various other pollutants are exposed to rainfall and flow unobstructed to storm drains located throughout the facility. In addition, Plaintiffs contend that facility users frequently urinate on the ground, and urine and nitrates are carried by storm water into the drains as well.

Plaintiffs assert that polluted storm water and non-storm water from the OMSS facility enters up to two dozen storm drains on or adjacent to the property and discharges directly into the Bay in violation of the Clean Water Act. Plaintiffs further

3

allege that Defendants have failed to comply with a host of permitting, monitoring, and reporting requirements under the Act.

## LEGAL STANDARD

Dismissal is appropriate under Rule 12(b)(1) when the district court lacks subject matter jurisdiction over the claim. Fed. R. Civ. P. 12(b)(1). Subject matter jurisdiction is a threshold issue which goes to the power of the court to hear the case. Federal subject matter jurisdiction must exist at the time the action is commenced. Morongo Band of Mission Indians v. Cal. State Bd. of Equalization, 858 F.2d 1376, 1380 (9th Cir. 1988). A federal court is presumed to lack subject matter jurisdiction until the contrary affirmatively appears. Stock W., Inc. v. Confederated Tribes, 873 F.2d 1221, 1225 (9th Cir. 1989).

A Rule 12(b)(1) motion may either attack the sufficiency of the pleadings to establish federal jurisdiction, or allege an actual lack of jurisdiction which exists despite the formal sufficiency of the complaint. Thornhill Publ'g Co. v. Gen. Tel. & Elecs. Corp., 594 F.2d 730, 733 (9th Cir. 1979); Roberts v. Corrothers, 812 F.2d 1173, 1177 (9th Cir. 1987). "In support of a motion to dismiss under Rule 12(b)(1), the moving party may submit affidavits or any other evidence properly before the court . . . It then becomes necessary for the party opposing the motion to present affidavits or any other evidence necessary to satisfy its burden of establishing that the court, in fact, possesses subject matter jurisdiction." Colwell v. Dept. of Health and Human

4

Services, 558 F.3d 1112, 1121 (9th Cir. 2009) (internal citations omitted); Savage v. Glendale Union High Sch., 343 F.3d 1036, 1039 n.2 (9th Cir. 2003). The court enjoys broad authority to order discovery, consider extrinsic evidence, and hold evidentiary hearings in order to determine its own jurisdiction. Rosales v. United States, 824 F.2d 799, 803 (9th Cir. 1987).

Dismissal under Rule 12(b)(6) for failure to state a claim is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). A complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a).

In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. NL Indus., Inc. v. Kaplan, 792 F.2d 896, 898 (9th Cir. 1986). However, this principle is inapplicable to legal conclusions; "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements," are not taken as true. Ashcroft v. Iqbal, ___ U.S. ___, 129 S. Ct. 1937, 1949-50 (2009) (citing Twombly, 550 U.S. at 555).

## DISCUSSION

Moving Defendants argue that Plaintiffs' notice letters, which are attached to Plaintiffs' First Amended Complaint, are

5

insufficient to support the Court's subject matter jurisdiction to hear Plaintiffs' claims under the Clean Water Act.  Title 33 U.S.C. § 1365(a) states that

> any citizen may commence a civil action on his own behalf--(1) against any person . . . who is alleged to be in violation of (A) an effluent standard or limitation under this chapter or (B) an order issued by the Administrator or a State with respect to such a standard or limitation[.]

In turn, 33 U.S.C. § 1365(b) requires the plaintiff to give notice of the alleged violation to any alleged violator of the standard, limitation, or order, at least sixty days prior to commencement of such a citizen's action.  Section 1365(b) further states, "Notice under this subsection shall be given in such a manner as the Administrator shall prescribe by regulation."

> The prescribed regulation, 40 C.F.R. § 135.3(a) provides,
>
> Notice regarding an alleged violation of an effluent standard or limitation or of an order with respect thereto, shall include sufficient information to permit the recipient to identify the specific standard, limitation, or order alleged to have been violated, the activity alleged to constitute a violation, the person or persons responsible for the alleged violation, the location of the alleged violation, the date or dates of such violation, and the full name, address, and telephone number of the person giving notice.

The Supreme Court has required the strict application of the notice requirements under this provision.  Hallstrom v. Tillamook County, 493 U.S. 20, 26-29 (1989) ("[T]he legislative history indicates an intent to strike a balance between encouraging citizen enforcement of environmental regulations and avoiding

6

burdening the federal courts with excessive numbers of citizen suits.")

Plaintiffs filed suit on August 31, 2010. Their original complaint attached a Section 1365 notice letter dated February 17, 2010. Subsequently, Plaintiffs filed their First Amended Complaint, which included the February 17, 2010 notice letter, and another notice letter dated September 2, 2010. FAC, Exs. A & B. The September 2, 2010 notice letter generally mirrors the content of the earlier notice letter, except that it names, in addition to Aboudi, Defendant City of Oakland, Defendant agencies and their presiding officials, and it omits certain businesses and their owners named in the previous notice letter.

I. Aboudi's Individual Liability

The first defect Moving Defendants assert is the purported failure to address Aboudi as an individual. Because the letters refer to Aboudi in his official capacity as president and a registered agent for OMSS, Moving Defendants contend that Aboudi was not properly notified as an individual. Both letters clearly identify Aboudi, repeating his name three times on the first page in relation to three separate addresses. The first and fourth paragraphs in the February 17, 2010 letter give notice to Aboudi as an owner, officer or operator responsible for the alleged violations at the OMSS facility. Likewise, the first and fourth paragraphs in the September 2, 2010 letter identify and notify Aboudi as a person responsible for the violations. Section V in

7

both letters names Aboudi as a person responsible for the alleged violations, stating, "River Watch puts . . . William Aboudi [and others]. . . on notice that they are the persons responsible for the violations described above."  Title 40 C.F.R. § 135.5(a) simply requires "sufficient information to permit the recipient to identify . . . the person or persons responsible for the alleged violation."

Moving Defendants argue that the allegations are insufficient to pierce the corporate veil, and therefore the Court may not exercise jurisdiction over Aboudi personally.  This argument, however, fails to recognize that, under the Clean Water Act, penalties may be imposed against individuals who are in positions of authority at polluting companies.  <u>Humboldt Baykeeper v. Simpson Timber Co.</u>, 2006 U.S. Dist. LEXIS 91667, at *9-10 (N.D. Cal.) (citing 33 U.S.C. §§ 1319(c)(2),(6)) (imposing liability on "any person who . . . knowingly violates" the Clean Water Act including "any responsible corporate officer."); see <u>United States v. Iverson</u>, 162 F.3d 1015, 1022-26 (9th Cir. 1998) ("Under the CWA, a person is a 'responsible corporate officer' if the person has authority to exercise control over the corporation's activity that is causing the discharges.  There is no requirement that the officer in fact exercise such authority or that the corporation expressly vest a duty in the officer to oversee the activity.").

Moving Defendants further contend that Plaintiffs have failed to state a claim under Rule 12(b)(6) because the allegations are

8

insufficient to establish Aboudi's individual liability on an alter ego theory.  For the reasons explained above, it is unnecessary for Plaintiffs to demonstrate a unity of interest between OMSS and Aboudi to state a claim against him as an individual.

II. Notice of Dates

Moving Defendants assert a second defect in the allegations. They contend that the Court lacks subject matter jurisdiction over Plaintiffs' claims due to inadequate notice in the First Amended Complaint and the notice letters of the dates of the alleged violations.

Moving Defendants rely heavily on <u>Washington Trout v. McCain Foods, Inc.</u>, where the plaintiffs' notice did not identify specific dates of the purported violations, but alleged that "[t]his pollution is substantial, longstanding, continuing, and unpermitted by the NPDES."  45 F.3d 1351, 1352 (9th Cir. 1995). The Ninth Circuit did not reach the issue of whether the notice letter adequately informed the alleged polluters of the violation dates.  <u>Id.</u> at 1352 n.2 ("Plaintiffs argue that by stating in their notice that the 'pollution is substantial, longstanding, and continuing' they have complied with the regulation's requirement of specifying the dates of the violation.  Because of our resolution of the case on other grounds, we need not reach this issue.").  Instead, the court found inadequate notice because the letter failed to give the identity and contact information of the

9

plaintiffs. Thus, the case does not stand for the proposition that notice of dates more specific than that given in Trout is mandatory under 33 U.S.C. § 1365(b) and 40 C.F.R. § 135.3(a).

There are eight causes of action in Plaintiffs' First Amended Complaint, and Plaintiffs have given sufficient notice of the dates of the alleged violations in all of them. The notice regulation does not require plaintiffs to "'list every specific aspect or detail of every alleged violation.'" San Francisco BayKeeper, 309 F.3d at 1158 (citing Community Ass'n for Restoration of the Environment v. Henry Bosma Dairy, 305 F.3d 943, 949 (9th Cir. 2002)). "Notice is sufficient if it is reasonably specific and if it gives 'the accused company the opportunity to correct the problem.'" Waterkeepers Northern California v. AG Industrial Mfg., Inc., 375 F.3d 913, 917 (9th Cir. 2004) (citing San Francisco BayKeeper, 309 F.3d at 1158).

Plaintiffs have alleged and given notice of the following "continuous" and "ongoing" violations from the date OMSS began operating the facility, on or about August 7, 2006: (1) failure to secure a NPEDS permit prior to discharging pollutants into waters of the United States (First and Second Causes of Action); (2) failure to develop and implement a Storm Water Pollution Prevention Plan (Fifth Cause of Action); (3) failure to collect and analyze storm water samples (Sixth Cause of Action); (4) failure to submit timely Annual Reports and reports of non-compliance with the General Industrial Storm Water Permit to the

San Francisco Bay Regional Water Quality Board (Seventh Cause of Action); and (5) failure to implement the best technology available that is economically achievable (BAT) and the best conventional pollutant control technology (BCT) (Eighth Cause of Action).  More specific dates are not required for these particular allegations.  San Francisco BayKeeper, 309 F.3d at 1158 ("Where BayKeeper alleged an ongoing violation of Tosco's obligation to implement best available technology to prevent storm water pollution, no specific dates were needed.").

The Third Cause of Action alleges the unlawful discharge of storm waters containing pollutants into the Bay.  The notice letters assert that the violations:

> have occurred and will occur on every significant rain event that has occurred since at least August 7, 2006 or any earlier date by which OMSS began operating the facility . . . Exhibit A, attached hereto, sets forth specific rain dates on which [the complaining parties allege] that OMSS has discharged storm water containing pollutants in violation of the Act . . .

Both notice letters attach lists specifying rain dates at the Port of Oakland in Oakland, California.  The information compares favorably with the rainfall tables that the Ninth Circuit accepted in Waterkeepers, 375 F.3d at 917-18 (reversing district court decision that rainfall tables did not provide adequate notice of dates of the alleged violations).  When the relevant sentences are read as a whole, and with Exhibit A, Moving Defendants' objections, parsing the words "significant rain event" compared to "rain event," are not reason to find that notice was inadequate.

The large number of dates simply indicates many rain dates when the violations are alleged to have occurred.

Plaintiffs' Fourth Cause of Action alleges unlawful discharges of polluted non-storm waters into the San Francisco Bay. The notices indicate that the violations occurred "on each date on which the facility has discharged non-storm water including fuel, oil and grease, rinse water, wash water, urine, or other wastes to the storm drains at the facility." Plaintiffs allege that these discharges have been ongoing since Moving Defendants began operating the facility. No specific dates are identified. Notice in this manner is reasonably specific because the alleged violations are clearly identified, providing Moving Defendants with an opportunity to fix the problem, if one exists.

The Ninth Circuit decision in <u>San Francisco BayKeeper</u> guides this result. There the plaintiff alleged that the defendants illegally discharged petroleum coke into a slough by storing large uncovered piles of the pollutant at a particular facility, a method of storage that allowed coke to be carried into the slough by wind and rain. 309 F.3d at 1155-56. The plaintiff further alleged that the defendants' careless loading methods caused coke to spill into the slough. The plaintiff provided a few specific dates when alleged spillage occurred, based on records of when ships were loading, and provided no exact dates for when the coke blew or flowed into the slough. Nevertheless, the court found

that there was adequate notice of the dates in relation to both sets of allegations. The court explained that

> the key language in the notice regulation is the phrase "sufficient information to permit the recipient to identify" the alleged violations and bring itself into compliance. Notice is sufficient if it is specific enough "to give the accused company the opportunity to correct the problem."

Id. at 1158 (internal citations omitted). Here, the notice letters were specific enough to inform Moving Defendants of the nature of the alleged violations, as well as the dates when those violations likely occurred. Moving Defendants are in a position to know when non-storm waters were discharged, if at all, into the storm drains because they operate the facility, and, presumably, are aware of and in communication with all of the businesses and individuals using the facility.

## CONCLUSION

Because the Court finds that notice was sufficient to inform Aboudi of his individual liability, and to state the dates of the alleged violations, the Court denies Moving Defendants' motion to dismiss. Docket No. 13.

IT IS SO ORDERED.

Dated: 2/14/2011

CLAUDIA WILKEN
United States District Judge